DOWNING & CO. *v.* UNITED STATES (No. 1749).[1]

1. SUGAR-MANUFACTURING MACHINERY.

A machine used to convert crystalline into amorphous sugar for making chocolate is not admissible free of duty as " machinery for use in the manufacture of sugar " under paragraph 391, tariff act of 1913, but dutiable as a

---

[1] Reported in T. D. 36802 (31 Treas. Dec., 429).

manufacture of metal not specially provided for under paragraph 167. It is a machine for use in the manufacture of chocolate rather than sugar. Whether or not it would be admissible free of duty if used in this country for manufacturing amorphous sugar directly from cane or beet juice and if amorphous sugar were in ordinary use in this country is not decided.

2. USE—ACTUAL, NOT POSSIBLE, THE TEST.

> Proof that a machine *actually* used in making chocolate is *susceptible* of being used in making sugar would not be sufficient to make it classifiable under paragraph 391, tariff act of 1913, as "machinery for use in the manufacture of sugar."

## United States Court of Customs Appeals, November 2, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7925 (T. D. 36528).

[Affirmed.]

*Allan R. Brown* for appellants.

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

[Oral argument Oct. 26, 1916, by Mr. Brown and Mr. Baldwin.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case is a machine which was assessed as a manufacture of metal not specially provided for under paragraph 167 of the tariff act of 1913. The importers, the appellants here, claim it to be entitled to free entry under paragraph 391 of the same act, relying upon the particular part thereof which reads as follows: "Machinery for use in the manufacture of sugar." The only question is whether that claim should be sustained. The Board of General Appraisers affirmed the collector's classification.

In United States v. American Express Co. (6 Ct. Cust. Appls. 494; T. D. 36124) Smith, Judge, speaking for this court said, referring to the part of paragraph 391 here under consideration:

> In our opinion the obvious intent of the provision was to favor the sugar-making industry and give the benefit of free entry at least to all machinery peculiar to and chiefly or exclusively used by sugar factories. That is to say, any machine constituting a necessary and essential part of the equipment of sugar factories and which is exclusively or chiefly used by them comes within the designation of "machinery for use in the manufacture of sugar."

We are not now disposed to disagree with our views so recently expressed as to the *purpose* of the provision under consideration and with that in mind proceed to inquire whether the machine in question is "machinery for use in the manufacture of sugar."

But one witness, who was really the importer in this case, testified in the appellants' behalf. He is engaged in the sugar machinery business, and ordered this machine abroad. After its importation it was set up and operated in the factory of Rockwood & Co., chocolate manufacturers, in Brooklyn, N. Y. In this factory a sirup is made by melting a crystalline sugar in another machine, which sirup is

then processed by the imported machine, with the result that an amorphous sugar is produced, and this in turn is there used in the manufacture of chocolate.

The witness testified in substance that amorphous' sugar is sometimes called "sand sugar" and is the standard sugar of Portugal and, Brazil, where it is in common daily use in restaurants, cafés, and hotels, much as crystalline or granulated sugar is in this country; that the ordinary processes of manufacturing sugar from cane or beet juice result in the crystalline product; that in the manufacture of chocolate amorphous sugar is preferable to crystalline because it unites much more easily with the chocolate; that the machine in question possesses the ability of transforming crystalline sugar when reduced to sirup directly into the amorphous article; that if it were desired to convert the cane or beet juice into the amorphous product, this machine is adapted to that use; that the idea of the inventor of the machine was to establish a "short cut" in the making of sugar; that the process of the machine is really one of aiding in the evaporation of the water, which, when applied to cane or beet juice, would leave such impurities in the sugar as were in the juice; that other processes or machines would be necessary to produce a refined sugar therefrom; and that he had seen one other like machine in operation in London, where it was employed in a biscuit or cracker making plant in much the same manner as in the Rockwood factory.

While the witness testified fully as to what in his opinion this machine was capable of doing as far as concerns the manufacture of sugar from cane or beet juice, his evidence is based upon his knowledge of the percentage of sugar in such juice and the processes of the machine instead of its actual employment for that purpose in the United States. As showing the possible value of the machine·in this country in the manufacture of sugar, we quote from his evidence the following:

Q. Would that sort of a machine be suitable for the ordinary commercial treatment of cane or beet sugar?—A. Yes;. if you could get the people to buy the sugar.

Q. You couldn't do that in this country, could you?—A. Could do it; yes. It is simply a commercial proposition.

Q. You never tried that, of course?—A. No, sir.

It is apparent from the testimony of the witness that he has seen but two machines of this character, neither of which is employed in the manufacture of sugar, unless the described operation in the Rockwood & Co. factory be such. It may be further observed that there is no evidence or claim that this machine was imported for use or has been used in any manner except as already set forth, and there is no claim or evidence that any like machines have ever been imported into this country.

We think it ought not to be held upon this record that the machine is entitled to free entry, as claimed. It is not employed in the sugar-making industry. Its use does not seem to be of benefit to that industry, but, rather, is beneficial only to the chocolate-making business, and, although an amorphous sugar results from its operation, the fact remains that the *sugar has already been produced from the raw material*, and the real function of the machine is to assist in its transformation from the crystalline to the amorphous form, which condition is required or is desirable in the manufacture of chocolate. The fact that it may be susceptible of a use which would bring it within the paragraph ought not to be successfully invoked in its favor until it shall at least appear that it has been applied or is intended to be applied to that use here. This may or may not happen. When it does will be time to consider whether or not the statute is applicable.

The judgment of the Board of General Appraisers is *affirmed.*